UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LARON D. BLUNT,

        Plaintiff,

v.                                                                      Case No. 21-CV-325

OFFICER LINDSEY,

        Defendant.

## DECISION AND ORDER

Plaintiff Laron D. Blunt, who is representing himself and confined at Dodge Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Blunt was allowed to proceed on an excessive force claim against defendant Milwaukee police officer Thomas Lindsay. On February 18, 2022, Lindsay moved for summary judgment. (ECF No. 27.) That motion is fully briefed and ready for resolution. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 16.)

### FACTS

On November 16, 2020, defendant Officer Thomas Lindsay was working as a liaison police officer at the Milwaukee County Criminal Justice Facility (CJF). (ECF No. 29, ¶ 4.)[1] As a liaison officer, he managed arrestees brought to CJF for booking, including securing arrestees and escorting them around the facility. (*Id.*, ¶ 5.) That

---
[1] Lindsay did not follow Civil Local Rule 56(b)(1)(C) and submit a separate statement of proposed facts. Any confusion regarding citations to the record are a result of Lindsay failing to follow the local rules.

day plaintiff Laron D. Blunt was brought to CJF for booking and Lindsay interacted with him in the course of his duties. (*Id.*, ¶ 6.) Lindsay asserts that Blunt was "boisterous" and "irate" because he was irritated that the booking process was taking a long time. (*Id.*) Blunt refused to cooperate with a nurse who was administering tests for COVID-19 and conducting a COVID screening. (*Id.*, ¶ 7.) Because of Blunt's behavior, someone (it is unclear from the record who) determined that Blunt needed to be moved from the bench to which he was handcuffed and placed in an isolation cell. (*Id.*)

Lindsay asserts that Blunt refused to move to a holding cell, stating, "I'm not going there." (ECF No. 29, ¶ 8.) Blunt also made his right hand, which was handcuffed to the bench, into a ball to make it difficult for Lindsay to unhandcuff him. (*Id.*, ¶ 9.) When Lindsay ordered Blunt to "unball" his hand, Blunt refused to comply. (*Id.*, ¶ 10.) Lindsay attempted to unball Blunt's hand by grabbing his fingers to pull them apart from Blunt's palm. (*Id.*, ¶ 11.) Lindsay also "deployed a focused strike" to Blunt's right hand to cause him to unball his fist. (*Id.*) Because he was struggling to get Blunt to unball his hand, Lindsay requested help from two members of the Milwaukee County Sheriff's Department, Corrections Officer Marcus Miller and Lieutenant John Dingman (both non-defendants). (*Id.*, ¶¶ 13-14.) With Miller's and Dingman's help, Lindsay was able to get Blunt to comply. (*Id.*, ¶ 14.) Lindsay does not describe how they were able to gain Blunt's compliance.

Blunt disputes most of Lindsay's account in a sworn declaration. (ECF No. 37.) The court also has the benefit of Blunt's complaint (ECF No. 1), which invokes 28

U.S.C. § 1746, making it appropriate to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011).

Blunt asserts that he was neither boisterous nor irate while waiting to be booked into the CJF. (ECF No. 37 at 1.) He cooperated with the nurse and took a COVID test. (*Id.*) While Blunt was cuffed to the bench, he admits his right hand was balled up, but denies that Lindsay ordered him to unball his hand before grabbing his fingers. (*Id.* at 2.) It was only after Lindsay twisted Blunt's wrist and bent his fingers that he started to yell at Blunt to unball his fist. (ECF No. 1 at 2.) He also threatened to break Blunt's fingers. (*Id.*) According to Blunt, Miller and Dingman intervened because, after Lindsay was twisting his hand and fingers for two to three minutes, Blunt asked them whether they were going to let Lindsay break his fingers. (*Id.* at 2-3.) Miller and Dingman noticed that Blunt was not resisting and made Lindsay step away from Blunt. (*Id.* at 3.) As a result of Lindsay's actions, Blunt states he had to go to the hospital to be treated for the injuries Lindsay caused to his right hand. (*Id.* at 3.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit."

*See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Blunt claims that Lindsay violated his constitutional rights by using excessive force when uncuffing him. Prior to conviction, a plaintiff may have an excessive force claim under either the Fourth Amendment or the Fourteenth Amendment. When an excessive force claim arises "in the context of an arrest or investigatory stop of a free citizen," the Fourth Amendment's guarantee of a citizen's "right 'to be secure in their

4

persons . . .against unreasonable seizures'" is invoked. *Graham v. Connor,* 490 U.S. 386, 395 (1989). When an individual has not yet been convicted, using unreasonable force amounts to punishment and a claim for excessive force arises under the Due Process clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law.")

In his materials supporting his motion for summary judgment, Lindsay applies the Fourth Amendment standard for excessive force but does not explain why he believes the Fourth Amendment standard applies. (ECF No. 28 at 5.) At screening the court applied the Fourteenth Amendment excessive force standard, assuming Blunt at that point was a pretrial detainee. (ECF No. 8 at 3.) It is unclear from the record whether a probable cause determination regarding Blunt's detainment had been made at the time of the incident involved. If a probable cause determination had been made, then the excessive force claim should be analyzed under the Fourteenth Amendment. *See Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) (abrogated on other grounds) ("[T]he Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause.").In any event, the standard is the same regardless of whether the claim is viewed as a violation of the Fourth or the Fourteenth Amendment. *See Lombardo v. City of St. Louis, Missouri*, 141 S.Ct. 2239, 2241 n. 2 (2021).

5

As mentioned above, under the Fourteenth Amendment, "'the Due Process clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham*, 490 U.S. 396). A pretrial detainee demonstrates that the force used on him amounted to punishment when he can show that "actions [were] taken with an 'expressed intent to punish'" or "by showing that the actions are not 'rationally related to a legitimate nonpunitive government purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979)). Also, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 397.

The court must consider the "facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. To make this determination, the court must consider "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. A court should consider the following factors when determining whether the use of force was reasonable:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury' any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* However, this list is not exclusive, and the court can consider other factors relevant to the case at hand. *Id.*

6

Case 1:21-cv-00325-WED   Filed 08/18/22   Page 6 of 9   Document 43

As justification for manipulating Blunt's fingers and striking Blunt's hand, Lindsay asserts that Blunt was "boisterous" and "irate" and refusing to cooperate with the nurse administering the COVID protocols. (ECF No. 28, ¶¶6-7.) Lindsay also asserts that Blunt refused to follow direct orders to unball his hand. However, Blunt refutes all of this. He says he was not resisting, was not irate, complied with the nurse, and that Lindsay never ordered him to unball his fist before twisting his fingers. Blunt also asserts that Lindsay was aggressively twisting his fingers for two or three minutes and threatening to break them. Blunt further states that Lindsay injured his hand badly enough he had to go to a hospital for medical attention.

When considering the facts in a light most favorable to Blunt, a genuine question of material fact exists as to whether the force Lindsay used was reasonable. Determining whether Lindsay's actions were reasonable requires a credibility determination. If the encounter happened the way Blunt describes, a reasonable jury could find that Lindsay's use of force was excessive and that Lindsay violated Blunt's constitutional rights.

## QUALIFIED IMMUNITY

Lindsay argues that, even if the court finds a question of material fact as to whether he used excessive force, he is entitled to qualified immunity. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. Appx. 773, 775 (7th Cir. 2018).

As discussed above, the court has already determined that a reasonable factfinder could conclude that Lindsay used excessive force. The only remaining question is whether the rights Lindsay may have violated were clearly established. It was clearly established in 2020 that officers cannot punish pretrial detainees by subjecting them to unreasonably excessive force when they are not actively resisting. *See Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (determining that a reasonable officer was on notice that a restrained and non-resisting suspect already lying on his back did not justify the use of a taser); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (concluding that a reasonable factfinder could find that an officer used excessive force when he slammed his knee into a detainee's jaw where there detainee was subdued by gunpoint and lying motionless on the ground); *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) ("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs."). Thus, Lindsay is not entitled to qualified immunity. As a result, Lindsay's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Lindsay's motion for summary judgment is denied. Because the case survives summary judgment, the court will schedule a conference to discuss further proceedings.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Lindsay's motion for summary judgment (ECF No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that a telephonic status conference be scheduled to discuss next steps.

Dated at Milwaukee, Wisconsin this 18th day of August, 2022.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge